[Nos. 15841, 15842.   Department One.—April 27, 1895.]

MATTHEW McGOWAN ET AL., RESPONDENTS, _v._ WILLIAM FORD, TREASURER OF MENDOCINO COUNTY, APPELLANT.

COUNTIES—CONTRACT FOR REPAIRS AND IMPROVEMENTS OF COURTHOUSE—NOTICE OF LETTING CONTRACT—CONSTRUCTION OF COUNTY GOVERNMENT ACT.—Section 25 of the County Government Act of 1891, requiring all county buildings to be let by contract, after notice by publication for sixty days, has no application to a contract for making repairs or alterations in the courthouse, or for laying walks and making improvements upon the grounds surrounding the courthouse.

ID. — CONTRACT FOR LIQUIDATED DAMAGES — PLEADING — INSUFFICIENT AVERMENT—PRESUMPTION.—In an action by a contractor to compel payment of warrants for repairs to the courthouse and improvements

of the courthouse grounds, under a contract which entitled the county to liquidated damages for each day the building should remain unfinished or incomplete after a certain date, where the answer does not aver that the repairs of the building were not completed and delivered within the time agreed upon, but only avers generally that the work was not completed before a subsequent date, it shows no case for liquidated damages, since the work included the improvements upon the grounds, and it may be assumed that the building was completed in time.

ID.—Time of Incurring Indebtedness—Fiscal Year—Invalid Order of Supervisors.—Where indebtedness was incurred within one fiscal year, it can only be paid out of the revenue provided for that fiscal year, and the board of supervisors have no jurisdiction or authority to carry the indebtedness over, and make it payable out of the revenue of the next fiscal year.

ID.—Judgment on Pleadings—Admissions of Answer.—Where a judgment is granted on the pleadings all of the averments of the answer are, in effect, admitted to be true.

ID. — Mandamus — Payment of Warrant — Presumption — Burden of Proof—Jurisdiction of Supervisors.—Upon the hearing of a writ of mandate to compel the payment of a warrant, where it is averred in the petition, and not denied, that the board of supervisors allowed the claim and ordered a warrant drawn therefor, and that a warrant was regularly drawn by the auditor and delivered to the respondents, it must be presumed that official duty in allowing and issuing the warrant was regularly performed, and the burden of proof is upon the treasurer to show that he was justified in refusing payment, and it does not rest upon the plaintiff to show by affirmative proof that the board of supervisors had jurisdiction to issue the warrant, merely because the averments of the answer show that the board of supervisors had no jurisdiction to allow the claim.

Appeals from two judgments of the Superior Court of Mendocino County.

The facts are stated in the opinion.

*J. E. Pemberton,* for Appellant.

*J. A. Cooper,* and *T. L. Carothers,* for Respondents.

Belcher, C.—There are two appeals in this case, and two separate transcripts are presented, but the questions involved may properly be considered together.

The respondents made application to the court below for a writ of mandate to compel the appellant, as treasurer of Mendocino county, to pay two warrants drawn on him by the county auditor.

The material facts stated in the petition are as follows:

On July 11, 1893, the county of Mendocino was justly indebted to respondents in the sum of $4,545.27 for work and labor done and performed by them under contract with said county in repairing the courthouse, county jail, and grounds and sidewalks surrounding the courthouse and public buildings on the courthouse square in Ukiah city.

On said July 11, 1893, the board of supervisors of the county duly made an order accepting said work, and awarding to respondents the sum of $4,545.27 for the performance of the same, according to the terms and conditions of the contract; and by the order directed the auditor of the county to draw his warrant on the county treasurer for the said sum.

On said July 11, 1893, the county auditor drew two warrants on appellant as county treasurer for the aggregate sum of $4,545.27, the first warrant, numbered 1746, for $2,970.27, and the second, numbered 1747, for $1,575.

The said warrants were delivered to the respondents, and by them presented to and registered by the treasurer on July 13, 1893, and were indorsed by him, "Not paid for want of funds."

In December, 1893, there was money in the hands of the treasurer for the payment of said warrants, and respondents then presented them to appellant as such treasurer, and demanded payment thereof; but, notwithstanding there was money in the proper fund appropriated for their payment, he then refused, and ever since has refused, to pay the same, or any part thereof.

On January 8, 1894, after the refusal to pay the warrants, respondents filed their petition for the writ of mandate, and the court granted an alternative writ, making it returnable on the fifteenth day of the same month.

In due time appellant appeared and filed his answer to the petition. The answer admits that on the eigh-

teenth day of July, 1892, respondents and the board of
supervisors of said county entered into and executed
what purported to be a contract, under the terms of
which respondents agreed to make certain alterations
in the courthouse of said county, to build and construct
certain additions to said courthouse, lay certain walks
around it, and make certain alleged improvements on
the grounds thereof, for the agreed compensation of
$7,990, but alleges that the said contract was not let to
the lowest bidder, after a publication of notice to bid-
ders and contractors that such a contract was to be let
for sixty days prior to the time set for opening bids, as
required by subdivision 9 of section 25 of the County
Government Act of 1891, and was therefore not a valid
contract.   It is then alleged that respondents have been
paid for the work done under the said contract the sum
of $5,000, leaving due them, if the contract is valid and
no deductions are to be made, only $2,990.   It is also
further alleged that by the terms of the contract the
work was to be completed on or before the first day of
November, 1892, and that respondents expressly agreed
to "complete and deliver the said building, entire and
perfect in all its parts," to the county on or before the
day named, and that "for each and every day or portion
thereof that the said building shall remain unfinished
or uncompleted after the said first day of November,
1892," they would pay to the county the sum of $10
as liquidated damages; that the "said work" was not
completed before April 5, 1893, and respondents had
not paid the liquidated damages, or made any deduc-
tions or allowances on account thereof.

The answer then proceeds to state that on April 6,
1893, respondents filed and presented to the board of
supervisors two claims, one for $2,990, "balance on con-
tract," and the other for $1,575, "balance due on extra
work," and that the board on that day allowed the same
for the sums named; that warrants therefor were drawn
by the auditor and delivered to and accepted by re-
spondents, and thereafter presented to and duly regis-

tered by the treasurer and indorsed, "Not paid for want of funds"; that about a month later—it having been discovered by respondents and the members of the board of supervisors that the board had incurred liabilities against the county during the fiscal year ending June 30, 1893, in excess of the income and revenue provided for that year—for the purpose of evading the provisions of section 18 of article XI of the constitution and the statutes passed in conformity thereto, it was agreed by and between the respondents and the members of the board that under the pretense that the work called for by said contract was not completed the said warrants should be recalled and revoked, and the time for finishing said work should be extended so as to end in the fiscal year beginning July 1, 1893, and the warrants for the payment of the same be drawn in that year, and apparently payable out of the revenue of that year; that thereafter, respondents consenting thereto, the board of supervisors made and caused to be entered on its minutes the following order:

"It duly appearing to this board that on the 6th day of April, 1893, warrants were issued to" respondents "for work done in putting in cement walks, steps, and improving the courthouse under contract" made by respondents with the county of Mendocino;

"And it further appearing that said warrants were inadvertently issued before the said work was completed, or the amount thereof due, and that the said contract is not completed according to the plans and specifications therefor;

"And it further appearing that the said" respondents "are still the owners and holders of the said warrants, and that the same are yet unpaid;

"It is therefore ordered that the said warrants be, and the same are hereby, canceled, and they are recalled and declared void and of no effect.

"This order not to impair the right of said" respondents "to receive their pay through proper warrants

when the said work is completed and accepted and the amount due.

"And the time to complete said contract in accordance with the plans and specifications is hereby extended to and including the 5th day of July, 1893."

The answer further states that thereupon respondents voluntarily surrendered said warrants, and consented to their being canceled and destroyed, but thereafter performed no more work on said courthouse, walks, or grounds, and that nevertheless the warrants mentioned in the petition were afterward ordered to be issued by said board in pursuance of said agreement; and "that there are no funds whatever in the treasury of said county belonging to the revenue of the fiscal year ending June 30, 1893, from which the warrants mentioned in plaintiffs' application and the writ herein can be paid; but that all the money now in the fund on which said warrants are drawn, or which has been therein at any time since said warrants were drawn, has been derived solely from the taxes, income, and revenue of said county for the fiscal year ending June 30, 1894."

The respondents demurred to the answer, but subsequently withdrew their demurrer and moved the court for judgment on the pleadings, and, after argument by counsel, the motion was submitted and taken under advisement. Thereafter the court filed a written opinion, holding that respondents were entitled to the relief demanded as to warrant No. 1746 for $2,970.27, but not as to warrant No. 1747; and judgment was thereupon entered, making the writ peremptory as to the first-named warrant.

Afterward the case came on regularly for trial by the court, without a jury, as to warrant No. 1747 for $1,575; and both parties declined to offer any evidence, claiming that the burden of proof was upon the other side. After argument and due consideration the court made and filed its decision, holding that the undenied allegations of the petition made a *prima facie* case for respondents, and that, in the absence of any evidence

in support of the affirmative allegations of the answer, respondents were entitled to judgment; and judgment was thereupon entered making the writ peremptory as to the last-named warrant.

From these judgments the appeals are prosecuted.

1. Appellant contends that the board of supervisors had no jurisdiction or power to enter into the said contract with respondents, because notice by publication to bidders was given for only eleven days, and not sixty, as required by subdivision 9, section 25, of the County Government Act of 1891; and hence the contract was *ultra vires* and void.

The section referred to provides that boards of supervisors, in their respective counties, have jurisdiction and power: " To cause to be erected, or rebuilt and furnished, a courthouse, jail, hospital, and such other public buildings as may be necessary; *provided*, . . . . all such buildings must be erected by contract, let to the lowest responsible bidder, after notice by publication in a newspaper of general circulation published in such county, for at least sixty days," etc.

The contract in question was not for the erection of any building, but for making repairs or alterations in the courthouse, and for laying walks and making improvements upon the grounds surrounding the courthouse. Obviously, therefore, the statute invoked and the cases cited have no application to such a contract, and do not render it void.

2. The point is made, but not much urged, that the county was entitled, under the contract, to liquidated damages, because the " work " was not completed within the time fixed therefor. The averments of the answer are, that respondents expressly agreed to complete and deliver the building to the county on or before November 1, 1892, and that for each day the building should remain unfinished or incomplete after that day they would pay to the county ten dollars as liquidated damages. There is no averment that the building was not completed and delivered within the time agreed upon,

but only that the work was not completed before April 5, 1893. But the "work" included as well the walks and improvements on the ground, and it may well be assumed, therefore, that the building was completed in time, and only the walks and improvements on the ground remained unfinished, thus giving to the county no right to claim any sum as liquidated damages.

3. Appellant further contends that the indebtedness to respondents was incurred during the fiscal year ending June 30, 1893, and could only be paid out of the revenues provided for that year, and that all such revenues had been drawn and expended before the allowances in question were made and the warrants therefor issued.

Section 18 of article II of the constitution provides that no county shall incur any indebtedness or liability, in any manner, or for any purpose, exceeding in any year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, and any indebtedness or liability incurred contrary to this provision shall be void.

This language of the constitution is repeated in section 5 of the County Government Act, and in section 6 of the act it is provided that "all contracts, authorizations, allowances, payments, and liabilities to pay, made, or attempted to be made, in violation of this act, shall be absolutely void, and shall never be the foundation or basis of a claim against the treasury of such county."

Section 36 of the same act also declares that "the board shall have no power to make allowances against any fund which, with all allowances previously made, and salaries and liabilities fixed by law payable therefrom, shall exceed the auditor's estimate of revenue for the year. . . . . Any allowance made contrary to the provisions of this section shall be null and void, and the auditor shall not draw his warrant therefor, nor the treasurer pay the same."

In *San Francisco Gas Co.* v. *Brickwedel,* 62 Cal. 641, the court said it was clear that the framers of the con-

stitution, in making the provision above referred to, meant "that each year's income and revenue must pay each year's indebtedness and liability, and that no indebtedness or liability incurred in any one year shall be paid out of the income and revenue of any future year."

The question then is, When was the indebtedness involved in this case incurred? Was it in a fiscal year ending in 1893 or in that ending in 1894? The question, so far as it relates to the indebtedness for the payment of which judgment was granted on the pleadings, must be solved by a consideration of appellant's answer, for when respondents moved for judgment on the pleadings, they, in effect, admitted that all the averments of the answer were true. (*Ward* v. *Flood,* 48 Cal. 46; 17 Am. Rep. 405; *Fleming* v. *Wells,* 65 Cal. 339; *People* v. *Johnson,* 95 Cal. 474.)

The answer clearly states that respondents fully completed the work to be done under their contract before the sixth day of April, 1893, and on that day presented to the board of supervisors a claim for the balance due on the contract, and the same was allowed and a warrant therefor drawn and delivered to them. It further states that in May following, by agreement between respondents and the members of the board of supervisors and for the purpose of evading the provision of the constitution and statute and making the money payable out of the revenue of the succeeding fiscal year, that warrant was surrendered and canceled, and the warrant dated July 11, 1893, was issued and accepted by respondents as a substitute therefor; and that when the last-named warrant was drawn all the money in the treasury out of which it could be paid, or which had been therein at any time since it was drawn, was derived solely from the income and revenue of the county for the fiscal year ending June 30, 1894.

If these statements are true, and for the purposes of this decision they must be accepted as such, it is obvious that the indebtedness was incurred as early at least

as April 6, 1893, when the first warrant was issued, and could only be paid out of the revenue provided for that fiscal year. It is also obvious that the orders of the board made for the purpose of carrying the indebtedness over and making it payable out of the revenue of the next fiscal year were unauthorized and without effect. (See *Schwartz* v. *Wilson*, 75 Cal. 502, where a similar question was considered.)

We conclude, therefore, that the court below erred in granting the judgment on the pleading.

4. Appellant contends that the second judgment appealed from—that making the alternative writ peremptory as to warrant No. 1747 for $1,575—was erroneous, and should be reversed, because the claim presented and allowed, as shown by his answer, was for extra work, and was not properly itemized as required by the statute.

The only question is, On which side was the burden of proof? It is earnestly urged that the averments of the answer show that the board of supervisors never had jurisdiction to audit and allow the claim, and that it devolved upon respondents to show by affirmative proof that it had such jurisdiction.

It is averred in the petition, and not denied, that the board allowed the claim and ordered a warrant drawn therefor, and that a warrant was regularly drawn by the auditor and delivered to respondents.

The presumption is that official duty is regularly performed (Code Civ. Proc., sec. 1963, subd. 15), and it seems to us that, when respondents presented their warrant to appellant for payment, there being money in the proper fund for that purpose, they were apparently entitled to have it promptly paid without question; and, when they were compelled to go into court to compel payment, they made a *prima facie* case by setting out the regular issuance of the warrant, their ownership of it, the refusal of the treasurer to pay it, and the fact that there was money in the treasury out of which it could be paid.

We conclude, therefore, that the burden was upon

the appellant to show that he was justified in refusing payment.

We advise that the judgment as to warrant No. 1746, involved in appeal No. 15841, be reversed and the cause remanded, and that the judgment as to warrant No. 1747, involved in appeal No. 15842, be affirmed.

SEARLS, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment as to warrant No. 1746, involved in appeal No. 15841, is reversed and the cause remanded, and the judgment as to warrant No. 1747, involved in appeal No. 15842, is affirmed.

HARRISON, J., GAROUTTE, J., VAN FLEET, J.