[S. F. No. 126.   Department Two.—May 5, 1896.]

WALLACE BRADFORD, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

MUNICIPAL CORPORATIONS—INCURRING INDEBTEDNESS IN EXCESS OF REVENUE—ILLEGAL TAXATION—INJUNCTION.—An action will lie to enjoin the supervisors, auditor, and treasurer of the city and county of San Francisco from incurring any indebtedness or expenses in excess of the revenue provided for the fiscal year, and to enjoin the supervisors from levying any tax or making any provision for the payment of the deficiency out of the public funds provided for the ensuing fiscal year.

ID. — POWER OF MUNICIPAL OFFICERS — NEEDS OF MUNICIPALITY.—When the revenue of a municipal corporation necessary for a given year has been determined, and such revenue collected and expended before the expiration of the fiscal year, the city officers cannot, for the purpose of providing for the present needs of the municipality during the residue of the year, incur debts and liabilities, to be met and discharged from the revenues of a subsequent year, unless two-thirds of the qualified electors voting at an election held for that purpose shall have authorized the same as provided in section 18 of article XI of the constitution.

ID. — ACTION BY TAXPAYER — LIEN—CLOUD UPON TITLE. — A taxpayer and property holder may invoke the interposition of equity to enjoin municipal officers from creating illegal debts, and from levying and collecting taxes in payment thereof, where such taxes, when levied, will become a lien upon the real property of the plaintiff, and will cast a cloud upon his title.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    A. A. SANDERSON, Judge.

The facts are stated in the opinion.

*Maurice S. Woodhams,* for Appellant.

Under section 18 of article XI of the constitution, no indebtedness or liability can be incurred by a municipality (except in the way provided therein), which shall exceed in any year the income and revenue that has been provided and received by it.    (*San Francisco Gas Co.* v. *Brickwedel,* 62 Cal. 642; *Schwartz* v. *Wilson,* 75 Cal. 505; *Shaw* v. *Statler,* 74 Cal. 259; *Lewis* v. *Widber,* 99 Cal. 414; *State* v. *Atlantic City,* 49 N. J. L. 558, and cases cited; *Spilman* v. *Parkersburg,* 35 W. Va. 605, and cases cited; *People* v. *Johnson,* 6 Cal. 499; *Nougues* v. *Douglass,* 7 Cal. 65.)    The provision of the constitution is not merely directory; it is a restriction.    (*People* v. *Johnson, supra; Nougues* v. *Douglass, supra.*)

*Rhodes & Rhodes,* and *McKinstry & McKinstry,* for Respondents.

Debts which the city does not directly, and by its own volition, contract, are not within the prohibitory clause of section 18, article XI, of the constitution. (*Lewis* v. *Widber,* 99 Cal. 412; *Davidson* v. *New Orleans,* 96 U. S. 104; *Cashin* v. *Dunn,* 58 Cal. 581; *Welch* v. *Strother,* 74 Cal. 413; *McCracken* v. *San Francisco,* 16 Cal. 630; *Herzo* v. *San Francisco,* 33 Cal. 141; *Pimental* v. *San Francisco,* 21 Cal. 351.)

SEARLS, C.—This action was brought May 14, 1895, to enjoin the defendants, as supervisors and as auditor and treasurer of the city and county of San Francisco, from incurring any indebtedness or expenses against said city and county during the months of May and June, 1895, whereby there shall be a deficiency in the income and revenue of said city and county provided for the fiscal year of 1894–95, and from ordering any sup-

plies or materials for said city and county for its main-
tenance, or any department thereof, whereby there shall
be created an indebtedness in excess of the revenue and
income provided for said city and county government
for said fiscal year 1894–95, and that the board of super-
visors be perpetually enjoined from levying any tax or
making any provision for raising any money for the
payment of such deficiency out of the public funds pro-
vided for the fiscal year 1895–96, etc.

Defendants interposed a demurrer to the complaint,
which was sustained by the court, and, plaintiff declin-
ing to amend, judgment was entered in favor of defend-
ants, from which judgment plaintiff appeals.

There is no necessity for a detailed statement of the
allegations of the complaint.

It sets forth clearly and in detail that the defendants,
composing the board of supervisors, prior to the com-
mencement of the fiscal year 1894–95, made an estimate,
as by law required, of the revenues necessary to main-
tain the municipal government during said fiscal year;
that, in due time, they levied a property tax to raise the
revenue so necessary.

That by reason of underestimating the necessary
expenses and overestimating the revenue to be derived
from all sources, the funds of the city for said fiscal year
were practically exhausted on the 1st of May, 1895, with
salaries of the officers for the city and county for the
months of May and June of said fiscal year, amounting
to two hundred and eighty thousand dollars, to be paid,
and the expenses of the various departments of the
municipal government, all of which are set out in detail,
to be met, which will leave a deficit at the end of the
fiscal year of about three hundred and fifty thousand
dollars.

That the city and county has already incurred debts
and liabilities in excess of the income and revenue pro-
vided for the fiscal year in the sum of about two
hundred and five thousand dollars. Under these cir-
cumstances the board of supervisors is actively engaged

in purchasing and securing the necessary supplies and services for the various departments of the city government during the remaining two months of the fiscal year, and, unless restrained, will do so; and, as an inducement to persons who may furnish services and supplies, they, in concert with the other defendants, viz., William Broderick, who is auditor, and James H. Widber, who is treasurer, are promising and intend, and unless restrained will, levy a tax for the fiscal year 1895–96, sufficient to pay for all supplies furnished and services rendered during the fiscal year 1894–95; that the auditor will audit and the treasurer will pay the claims and demands so illegally contracted and incurred, etc., all of which is claimed to be in violation of section 18 of article XI of the constitution.

The assent of two-thirds of the qualified electors of the city and county has not been sought or had warranting such expenditure.

Section 18 of article XI of our state constitution, as amended in 1892, reads as follows: "No county, city, town, township, board of education, or school district shall incur any indebtedness or liability, in any manner or for any purpose, exceeding in any year the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also provision to constitute a sinking fund for the payment of the principal thereof on or before maturity, which shall not exceed forty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void."

The original section was precisely the same as the amendment, except that it required the principal of indebtedness contracted under it to be paid within "twenty years," whereas the amendment provides that it shall

not exceed *forty years* from the time of contracting the same.

A preliminary question is presented by the case as made by the complaint, which, although not urged by counsel, needs to be met at the outset of our deliberations. It is this: Will an injunction lie to prevent municipal authorities from levying and collecting an illegal tax?

In *Linden* v. *Case*, 46 Cal. 171, it was held by this court that an injunction will not be granted to restrain a board of supervisors from incurring liabilities which are not a legal charge against the county.

The groundwork of the decision, as enunciated by the learned judge who prepared the opinion, may be said to be: 1. If claims not legally chargeable to the county are allowed, neither the allowance nor the warrants drawn therefor create any legal liabilities; 2. If such illegal claims are allowed by the board of supervisors against the county, it will be the duty of the auditor to refuse to draw warrants therefor; and should he do so it will become the duty of the treasurer to refuse to pay them; 3. The presumption is (in the absence of allegations to the contrary) that these officers will faithfully discharge their duty in the premises.

The same doctrine was maintained upon a similar state of facts, and for like reasons, in *Merriam* v. *Board of Supervisors of Yuba County*, 72 Cal. 517.

The causes for which courts of equity will grant injunctions are assignable to well-known heads. Among these are fraud, breach of trust, multiplicity of suits, inadequacy of the ordinary remedies at law, etc.

To entitle a party to relief in equity, he must bring his case under some acknowledged head of equity jurisdiction. In the cases cited above nothing of this kind was done. The complainants showed an apprehended violation of law on the part of the board of supervisors, but that alone is not sufficient. They failed to show that injury to them of any kind would follow as a legal sequence of such violation of duty.

The case at bar may be differentiated from those mentioned in the following particulars:

Here, the presumption that the auditor and treasurer will do their duty, and refuse to audit and pay the illegal demands, is negatived by the express averments of the complaint, which, for all the purposes of this case, are to be taken as true.

Here, the illegal tax will be. levied and collected, and will become a lien upon the real property of the plaintiff, and is liable to cast a cloud upon the title thereof.

Here, the tax when levied and collected will cause such an intermingling of the lawful tax with the unlawful that it will be impossible to segregate them, and hence no action to stay the collection of the tax, or to recover back the money unlawfully exacted, can be maintained.

Even if money thus paid could be recovered, it would give rise to a multiplicity of suits, which it is an object of equity to avoid.

To refuse plaintiff relief here is but to lay the foundation later on when the tax is levied for saying to him that, the tax being fair on its face and there being no constitutional or statutory inhibition as to the extent of the levy, the amount or rate thereof is in the discretion of the board of supervisors, and courts never interfere by injunction with the exercise of discretion by municipal officers.

Where a tax is levied for a specific object, and is upon its face in excess of the jurisdiction of the board or officers making the levy, and hence void, the matter can be reached by a writ of *certiorari* (review).

But it is apparent at a glance that no such relief can be had in a case like the present for the want of such illegality appearing on the face of the record.

We are of opinion that there is nothing in the cases of *Linden* v. *Case, supra,* and *Merriam* v. *Board of Supervisors of Yuba County, supra,* which militates against the right to an injunction in the case at bar.

The question still remains: Will a court of equity

restrain the levy and collection of an illegal municipal tax at the suit of a taxpayer and property holder?   The authorities on the subject are not uniform, but, upon an examination of a large number of the adjudicated cases, we think the preponderance in number and reason is overwhelmingly in favor of the affirmative of the proposition.

Dillon in his work on Municial Corporations, fourth edition, sections 914–25, treats the subject at length, and reaches substantially the conclusion of the supreme court of the United States declared in *Crampton* v. *Zabriskie,* 101 U. S. 601, in which it was said by Mr. Justice Field, that "of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt which they, in common with other property holders of the county, may otherwise be compelled to pay, there is at this day no serious question.

"The right has been recognized by the state courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse, and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere, upon the application of the taxpayers of a county, to prevent the consummation of a wrong when the officers of these corporations assume, in excess of their powers, to create burdens upon property holders.

"Certainly, in the absence of legislation restricting the right to interfere in such cases to public officers of the state or county, there would seem to be no substantial reason why a bill by or on behalf of individual taxpayers should not be entertained to prevent the misuse of corporate power.   The courts may be safely trusted to prevent the abuse of their process in such cases."

The trend of nearly all the later cases is in the same direction. (*Boyle* v. *New Orleans,* 23 Fed. Rep. 843, 1885; *Harrington* v. *Plainview,* 27 Minn. 224; *Willard* v. *Comstock,* 58 Wis. 565; 46 Am. Rep. 657; *Scott* v. *Alexander,*

23 S. C. 120; *Richmond* v. *Crenshaw*, 76 Va. 936; *Sackett*
v. *New Albany*, 88 Ind. 473; 45 Am. Rep. 467; *Butler* v.
*Detroit*, 43 Mich. 552; *Robertson* v. *Breedlove*, 61 Tex.
316; see Dillon on Municipal Corporations, secs. 914–25,
where the cases are collected.)

We conclude, then, that in a proper case municipal
officers may, at the instance of a taxpayer, be restrained
from contracting illegal debts and from levying and
collecting taxes for the payment thereof, and from en-
forcing the payment of such taxes.

This brings us to the consideration of the merits of
the case at bar. The question presented seems a fairly
plain one, and is approached only with that solicitude
which follows from a realization of the momentous con-
sequences flowing from its determination.

The question, briefly stated, is this: When the revenue
of the city and county necessary for a given year has
been determined, such revenue collected and expended,
before the expiration of the fiscal year, can the city offi-
cers, for the purpose of providing for the pressing wants
of the municipality during the residue of such year,
incur debts and liabilities to be met and discharged
from the revenues of a subsequent year?

A question somewhat similar in principle arose under
the constitution of 1849, which inhibited the legislature
from creating any debt in any way (except for the pur-
poses and in the manner therein provided), which
should, in the aggregate, with previous debts and liabili-
ties of the state, exceed three hundred thousand dollars.

The legislature appropriated money which, with the
debt due and owing, constituted an indebtedness in ex-
cess of three hundred thousand dollars. And in *People*
v. *Johnson*, 6 Cal. 499, the supreme court held that the
attempted appropriation was in conflict with the con-
stitutional provision and void.

It was urged there, as here, that if the constitutional
restriction be rigidly enforced, a contingency may arise
in which the wheels of government must stop for want
of necessary funds to keep it in operation.

The court held, however, that the language of the article there quoted " is too clear and explicit to admit of but one interpretation," and added: " In fact, it would defy the ingenuity of the most subtle intellect to invent a consistent interpretation other than that which naturally suggests itself from the words of the article," etc.

We take much the same view of the section of our constitution quoted above. It is couched in language so plain and explicit as not to be misunderstood or to leave room for judicial interpretation or other inference than that naturally and irresistibly deducible therefrom.

The palpable object of the provision was and is to confine municipal expenditures for each year to the income and revenue of such year, save only in the cases where two-thirds of the qualified electors shall determine as in the section provided. It places a limit—a check—upon the power of municipal officers to expend money beyond the resources provided for the current year.

It is a residuum of power vested in the electors, to be used by them in case of emergency calling for its exercise.

The motive which may influence municipal officers to impose a low rate of taxation, so soothing to the taxpayer, and to indulge in the practice of expending large sums of the people's money—a practice always popular with the recipients of public funds—is easily comprehended.

To thwart the possibility of such a course may have been an object of the framers of our constitution.

Be that as it may, one thing is certain: for causes which seemed good to the framers of our fundamental law, a barrier against indebtedness by municipal officers and local bodies has been created by the constitution. The door has been locked against all indebtedness of these local bodies, and the key placed in the hands of the electors, who alone can use it, and the judiciary may

not arrogate to itself the power to undo what has been thus solemnly done:

The wisdom or folly of the constitutional provision cannot, in a plain case, furnish us with a factor in the problem for solution.

Where the matter is clouded in doubt and uncertainty, such considerations may aid in its solution. We perceive no cause to doubt the object of the provision, or to draw but a single inference from the language used to express the legislative will as contained in section 18.

Counsel for respondent contend with much acumen that the city and county government, having been organized pursuant to law, divided into various departments, and the duty of maintaining those departments devolved upon the supervisors by statutes and ordinances enacted prior to the commencement of the fiscal year 1894–95, no discretion is now vested in the board, and that their plain and manifest duty is to provide those supplies and services, without which the city government cannot exist as an active entity, the disastrous consequence of which is vividly portrayed.

We answer this argument by saying the duty of the board of supervisors is, or may be, twofold: 1. To provide the funds and revenue to support the government; 2. To expend them for such support. The former is the predicate of the latter, without the performance of which primary duty no duty to expend the revenue can arise until the electors shall have authorized such expenditure by a two-thirds vote, etc.

It seems to us like a solecism to say that the *duty* to contract debts and liabilities on behalf of the city exists in a case where the constitution expressly inhibits it.

It is true that in *Lewis* v. *Widber*, 99 Cal. 412, it was held that the payment of the salary of a public officer, whose office has been created and salary fixed by a law of the state, is not within the prohibition of section 18 of article XI, which section, it was held, refers only to indebtedness or liability incurred by the act or conduct of the municipal body.

It will be observed that the constitutional inhibition runs, not against the legislature of the state, but against the cities, towns, etc., against the several local governments enumerated.

If, therefore, the legislature shall create offices and fix the salaries to be paid to them from the local treasuries, or devolve other indebtedness or liabilities upon the city within its legislative power and without their volition, it only remains for the municipal authorities to comply with such laws of the state.

The debts and liabilities of which complaint is made in the case at bar are but the ordinary debts created by the municipality itself, and are of the kind which must be paid out of the revenues of the current year, or the constitutional provision is meaningless.

We think the whole question involved is met and decided in favor of appellant in *San Francisco Gas Co. v. Brickwedel*, 62 Cal. 641, *Shaw* v. *Statler*, 74 Cal. 258, *Schwartz* v. *Wilson*, 75 Cal. 502, and *McBean* v. *Fresno*, *ante, p.* 159.

Inasmuch as there was no injunction granted in the case, and as the fiscal year during which the threatened tax was to be levied and collected has passed, it is highly probable the case has ceased to be important. The principle, however, still remains, and this, together with the question of costs, has been regarded as of sufficient importance to demand a determination in brief form.

We are of opinion the complaint states a cause of action and entitles the plaintiff to the relief demanded; we therefore recommend that the judgment be reversed and the court below directed to overrule the demurrer, with leave to defendants to answer.

VANCLIEF, C., and BRITT, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed and the court below directed to overrule the demurrer, with leave to defendants to answer.

McFARLAND, J., TEMPLE, J., HENSHAW, J.