[Sac. No. 1455.  In Bank.—October 3, 1907.]

## COUNTY OF TEHAMA, Respondent, v. E. L. SISSON, County Treasurer, et al., Appellants.

COUNTY INDEBTEDNESS—YEARLY INCOME—CONSTITUTIONAL LAW—ESTOPPEL OF COUNTY.—Section 18 of article XI of the state constitution, providing that "No county . . . shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two thirds of the qualified electors thereof, voting at an election to be held for that purpose," means that each year's income and revenue must pay each year's indebtedness or liability and that no indebtedness or liability incurred in any one year shall be paid out of the income or revenue of any future year.  This prohibition is a limitation upon the powers of the officers of a county and prevents them from creating a liability against the county contrary to its terms; and the county by receiving property or services beyond its ability to pay out of the revenues of the current year is not estopped from defending against a claim that they be paid out of the revenues of a succeeding year.

ID.—SCHEME TO PAY INDEBTEDNESS FROM INCOME OF SUCCEEDING YEAR— ACTION TO ENJOIN PAYMENT OF WARRANT.—During the fiscal year commencing July 1, 1902, the board of supervisors of Tehama County incurred indebtedness and allowed claims against the indigent fund in excess of the revenues provided for that fund for that fiscal year, and shortly before the expiration of the fiscal year some of the members of the board, acting in their individual capacity, borrowed from a bank the amount of the estimated deficit, gave their individual note therefor and caused the money so obtained to be placed to the credit of the indigent fund by the county treasurer.  The board caused an entry to be made in their records

during that fiscal year reciting in effect that the money was obtained as the proceeds of the sale by the county of county property. After the commencement of the next fiscal year the board caused an entry to be made in its records of a repurchase of such property for the amount for which it purported to have been sold and ordered a warrant to be drawn on the indigent fund for such amount. This warrant was delivered to the bank and the proceeds thereof were to be applied to the satisfaction of the note given by the individual supervisors. The sale of county property and repurchase thereof recited in the records of the board were entirely fictitious and colorable. *Held,* that the effect of the transactions had and orders made by the board of supervisors would be, if carried into effect, to pay indebtedness incurred in the fiscal year 1902-03 out of the revenues provided for the year 1903-04, and would be in violation of section 18 of article XI of the constitution, and that in an action to enjoin the payment of such warrant the fictitious character of the sale and repurchase, as entered in the records of the board, might be shown.

ID.—FINDING AS TO SURPLUS IN GENERAL FUND.—In an action to enjoin the payment of such warrant a finding that at the end of the fiscal year 1902 there was a surplus in the general fund of the county sufficient to pay all claims chargeable against the indigent fund is not equivalent to a finding that such surplus was sufficient to pay all claims chargeable against the general fund, nor that such surplus existed at the time the warrant in question was drawn.

ID.—PAYMENT WITHOUT AUTHORITY OF LAW—DISTRICT ATTORNEY MAY BRING ACTION WITHOUT ORDER OF SUPERVISORS.—An order of the board of supervisors directing the payment of such warrant is an order for the payment of money made "without authority of law" within the meaning of section 8 of the County Government Act, and the district attorney is authorized by that section to bring an action in the name of the county to enjoin its payment without an order of the board of supervisors authorizing him to bring it. In such action, in addition to the county treasurer, all persons who have an interest in the subject-matter of the litigation may be joined as defendants.

ID.—PRELIMINARY INJUNCTION—AMENDED COMPLAINT—REFUSAL TO DIS-SOLVE WRIT.—It is within the discretion of the court to permit the filing of an amended complaint to support a preliminary injunction already issued, and if it shows good ground for the injunction it is not error to refuse to dissolve the writ for the mere reason that the original complaint may have been defective.

ID.—APPEAL FROM FINAL JUDGMENT—ORDER REFUSING TO DISSOLVE RE-VIEWABLE.—An order refusing to dissolve a preliminary injunction is reviewable on an appeal from a final judgment granting a permanent injunction, but if such final judgment was correctly rendered any error in granting or in refusing to dissolve the preliminary injunction becomes immaterial.

APPEAL from a judgment of the Superior Court of Tehama County and from an order refusing a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

P. H. Coffman, and H. P. Andrews, for Appellants.

U. S. Webb, Attorney-General, M. G. Gill, District Attorney, and Charles A. Garter, for Respondent.

SLOSS, J.—This action, instituted by the district attorney of Tehama County to restrain the payment of a warrant for nine hundred and fifty dollars drawn by the auditor of said county on the treasurer thereof, resulted in a judgment in favor of the plaintiff. The defendants appeal from the judgment and from an order denying their motion for a new trial.

Findings amply sustained by the evidence, taken together with uncontroverted averments of the complaint, disclose this state of facts: For the fiscal year commencing July 1, 1902, and ending June 30, 1903, the board of supervisors of Tehama County had raised by taxation a fund known as the indigent fund, to be applied to the care and maintenance of the indigent sick and dependent poor of the county, and the support of the county hospital. During said year the board of supervisors had incurred indebtedness in behalf of the county and allowed claims for the same against the indigent fund to such an extent that on June 20, 1903, a few days before the expiration of the fiscal year 1902-3, all of the revenues provided for that fund for the then fiscal year had been exhausted, and claims had been allowed and debts and liabilities incurred by the said board of supervisors, chargeable against the indigent fund to such an extent that in the estimation of the board an additional sum of nine hundred and fifty dollars would be required in said fund for that year to meet the payment of such claims and liabilities. On June 20, 1903, G. W. Vestal, H. C. Kauffman, W. H. Samson, and Perry E. Lee, four of the members of the board of supervisors, acting in their individual capacities, borrowed nine hundred and fifty dollars from the Bank of Tehama County and executed a joint and several promissory note to the bank for said sum. The money

so borrowed was paid by the bank to A. L. Conard, who at once delivered it to E. L. Sisson, the county treasurer. Sisson credited it to the indigent fund of the county, and out of it claims accruing during the fiscal year 1902-3 were subsequently allowed and paid. This addition of nine hundred and fifty dollars to the indigent fund for the year 1902-3 was represented in the records of the board of supervisors as having been realized in the following manner: At a meeting held on the twentieth day of June, 1903, the board of supervisors caused to be entered in their minutes an order reading in part as follows: "It appearing to the Board that it is necessary to sell and dispose of some of the property at the County Hospital, in order to raise additional funds to pay the outstanding indebtedness of the amount charged and registered against the Indigent Fund for the Fiscal Year ending July 1, 1903, therefor it is hereby ordered that the crop of fruit now growing on the trees and vines in the orchard at the County Hospital be sold, and it is further ordered that the said crop of fruit be sold by the Board as a whole, and that said crop of fruit be and the same is hereby offered for sale to the highest bidder at this time (the said fruit being the product of the County Farm). The said crop of fruit was then offered for sale, and A. L. Conard bid the sum of $950 for the said crop of fruit. There being no further bids, it is hereby ordered that the said crop of fruit now growing on the trees and vines in the orchard of the County Hospital be and the same is hereby sold to A. L. Conard for the sum of $950, and he is hereby directed to pay the said amount into the County Treasury to the credit of the Indigent Fund. It appearing that the proceeds of the sale of the crop of fruit would be sufficient to pay the outstanding indebtedness of the amount chargeable against the Indigent Fund to July 1, 1903, it is ordered that no other property be offered for sale."

No delivery of the said fruit, which, as the court finds, was worth not exceeding one hundred dollars, was ever made to Conard, and he never took possession of any of it.

On the fourteenth day of July, 1903, after the commencement of the next fiscal year, said board of supervisors met and entered an order reading as follows: "It is ordered that the crop of fruit growing on the trees and vines at the County Hospital be purchased from A. L. Conard for the sum of $950,

and the County Auditor is hereby ordered to draw a warrant in favor of said A. L. Conard for the sum of $950 in full payment of the said crop of fruit, said warrant to be drawn on the Indigent Fund.'' Pursuant to this order the auditor drew his warrant, number 214, in favor of A. L. Conard or order. This warrant was delivered by Conard to the Bank of Tehama County, and while it was still unpaid this action was instituted by the district attorney to prevent its payment. The bank will, if it collects the warrant, apply the proceeds to the satisfaction of the promissory note executed to it by the members of the board of supervisors. Conard had no interest in the transactions above set out except to aid in carrying out the plans of the defendant members of the board of supervisors.

The court finds—and in view of the facts above stated it is difficult to see how any other inference is possible—that the sale to Conard and the purchase from him were not made in good faith, but were a merely ostensible and colorable sale and purchase, and that the transactions and orders of the board of supervisors constituted a plan or device by which the indebtedness of Tehama County, incurred during the fiscal year commencing July 1, 1902, and allowable against the indigent fund for that year, might be paid from the revenues provided for said fund for the fiscal year commencing July 1, 1903, without the assent of two thirds of the qualified electors of said county. It is further found that while the indigent fund was exhausted as above stated, there was at the expiration of the fiscal year 1902-3 a surplus of moneys in the general fund provided for said fiscal year sufficient to pay all claims and indebtedness chargeable against the indigent fund. The board of supervisors never authorized or directed the district attorney to prosecute this action.

The court made conclusions of law to the effect that the payment of the warrant number 214 would have the effect of paying the indebtedness of the county incurred during the fiscal year 1902-3 from the revenues provided for the indigent fund of the county for the next fiscal year; further, that the defendants, members of the board of supervisors, were interested in the so-called contracts for the sale and purchase of the crop of fruit and in the payment of said warrant, and their interest was such as to make illegal and void all

of the said contracts and proceedings and the warrant itself; further, that the action is properly brought and prosecuted by the district attorney. Accordingly, a decree was entered enjoining the treasurer of the county from paying the said warrant from the funds or money of said county, enjoining the Bank of Tehama County from presenting the said warrant to the treasurer for payment, and enjoining the board of supervisors from ''making any order or allowance for the payment of any debt, indebtedness or liability incurred by the said board of supervisors during the fiscal year commencing July 1, 1902, from the moneys or revenues provided for such fund for any subsequent fiscal year.''

Section 18 of article XI of the constitution of California provides: ''No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two thirds of the qualified electors thereof, voting at an election to be held for that purpose,'' etc. In *San Francisco Gas Co.* v. *Brickwedel*, 62 Cal. 641, this court said: ''We think it clear that when the framers of the present constitution said, as they did by section 18 of article XI of that instrument that 'no county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two thirds of the qualified electors thereof, voting at an election to be held for that purpose,' etc., they meant that no such indebtedness or liability should be incurred (except in the manner stated) exceeding in any year the income and revenue actually received by such county, city, town, township, board of education or school district. In other words, that each year's income and revenue must pay each year's indebtedness or liability, and that no indebtedness or liability incurred in any one year shall be paid out of the income or revenue of any future year'' This construction of the constitutional provision has repeatedly been affirmed in later cases. (*Shaw* v. *Statler,* 74 Cal. 258, [15 Pac. 833] ; *Schwartz* v. *Wilson,* 75 Cal. 502, [17 Pac. 449] ; *McGowan* v. *Ford,* 107 Cal. 177, [40 Pac. 231] ; *Weaver* v. *San Francisco,* 111 Cal. 319, [43 Pac. 972] ; *Bradford* v. *San Francisco,* 112 Cal. 537,

[44 Pac. 912]; *Buck* v. *Eureka,* 119 Cal. 44, [50 Pac. 1065].)

That the effect of the transactions had and the orders made by the board of supervisors in the case at bar will be, if such transactions are carried to their conclusion, to pay the indebtedness incurred in the year 1902-3 out of the revenues provided for the year 1903-4, is too plain for argument. The result of paying the warrant in question will be to refund to the Bank of Tehama County the sum of nine hundred and fifty dollars which it advanced and which was used for the purpose of paying indebtedness òf the county incurred prior to June 30, 1903, and this repayment is to be made out of the indigent fund provided for the year 1903-4. This would be a palpable violation of the letter and the spirit of section 18 of article XI of the constitution.

It is argued by the appellants that the "indigent fund" is not a fund created by law, and that the liabilities incurred and allowed against said fund during the year 1902-3 might with propriety have been allowed and paid out of the general fund for that year, in which, as the court has found, there was at the end of the year a surplus sufficient to meet all of these demands. This we may assume to be so. But if it be granted that the liabilities incurred on account of the care of the poor of the county for the year 1902-3 might, in case of a deficiency in the indigent fund provided for that purpose, have been chargeable against any surplus in the general fund, the effect of the payment of the warrant here in question would not be to pay such claims out of any surplus in the general fund. The finding is merely that at the end of the year there was a surplus in the general fund sufficient to pay all claims chargeable against the *indigent* fund, not that there was sufficient to pay all claims chargeable against the *general* fund, nor that such surplus existed at the time the warrant in question was drawn. Further claims might be presented after the end of the fiscal year (County Government Act 1897, sec. 40, [Stats. 1897, p. 470]), with the result that no surplus would be left in the general fund to be carried over into the fund of a succeeding year. No such surplus could be carried over until all claims of the preceding year had been paid (*Bilby* v. *McKenzie,* 112 Cal. 143, [44 Pac. 341]), and the allowance of the warrant in question, pay-

able out of the indigent fund for 1903-4, was therefore not
a direction that the same be paid out of any surplus of the
funds of the preceding year, but was an order that it be paid
out of the funds of the succeeding year. This is prohibited
by the constitution. Admitting that the board of supervisors
may take steps to pay the expenses incurred during the year
1902-3 out of any surplus left in the general fund for that
year, they have not the right to pay such liabilities out of the
funds and revenues provided for the ensuing year.

It is strongly urged by the appellants that since the board
of supervisors of the county had the power to purchase for
the county any personal property necessary for the use of the
county (County Government Act, sec. 25, subd. 7, [Stats.
1897, p. 459]), and to sell at public auction any property
belonging to the county not required for public use (sec. 25,
subd. 9), the determination by the board of supervisors that
the fruit in question should be sold, and the subsequent deter-
mination that it should be bought, were acts within the au-
thority and jurisdiction of the board and cannot be questioned
collaterally. The principle relied upon has been frequently
applied to cases where the board of supervisors had allowed
claims or demands against the county, and it was held that
the justice and propriety of the claims were concluded by
the allowance of the board and could not be inquired into
by the courts. (*Robinson* v. *Supervisors,* 16 Cal. 209; *El
Dorado County* v. *Elstner,* 18 Cal. 145.) So, in *Lamberson* v.
*Jefferds,* 118 Cal. 363, [50 Pac. 403], the court, in speaking
of an order by the board of supervisors, allowing a claim
for legal services rendered to the county, said: "The allow-
ance and settlement of the claim by the board of supervisors
is an adjudication by a tribunal having jurisdiction of the
matter that the services have been rendered and of the cor-
rectness of their value, and is conclusive." (See, also, *Colusa
County* v. *De Jarnett,* 55 Cal. 373; *Kenna* v. *Board of Super-
visors,* 89 Cal. 11, [26 Pac. 615].) It is sought by the
appellants to apply the doctrine of these cases to the case
at bar, it being argued that the order of the board of super-
visors that the county pay for the fruit crop alleged to have
been purchased of A. L. Conard constituted a conclusive de-
termination that the fruit crop was the property of Conard,
that it was worth nine hundred and fifty dollars, that it was

to the interest of the county to purchase and pay for it and that there was due Conard from the county nine hundred and fifty dollars. But the rule invoked should not be carried to the extent claimed. Here, as is found by the court upon evidence which is not open to question, the board of supervisors did not in fact sell or buy any property, but, for the purpose of evading a constitutional restriction, adopted and entered upon its records resolutions purporting to authorize and show a pretended sale and purchase which never took place. To allow to such orders the conclusive effect claimed by appellants would be to abrogate the constitutional restriction in question and make it possible for boards of supervisors to act in defiance of the constitution, provided that they merely cast their illegal action in the form of a fictitious transaction, which, if actually consummated, they had the power to conclude. While, where property has actually been bought by a county, the determination by the supervisors that such purchase is necessary, that the property is of a certain value and that such value should be paid therefor, may be conclusive, the board cannot, by a mere entry upon their minutes that they have purchased property for a certain price, preclude an inquiry into the facts, when in reality there has not been any purchase of property at all. In *McGowan* v. *Ford,* 107 Cal. 177, [40 Pac. 231], the county of Mendocino had incurred an indebtedness for work done in repairing county buildings. The work was completed in one fiscal year, but the board of supervisors attempted to make payment out of the revenues of the succeeding year, and to that end made an order reciting that the work had not been completed, and extending the time for its completion to a date in the ensuing fiscal year. No effect was allowed to this device, the court saying: "It is also obvious that the orders of the board made for the purpose of carrying the indebtedness over and making it payable out of the revenue of the next fiscal year were unauthorized and without effect. (See *Schwartz* v. *Wilson,* 75 Cal. 502, [17 Pac. 449], where a similar question was considered.)" If the board of supervisors could not bind the county by a recital that a debt incurred in one year had been incurred in the next, an order reciting a purchase of fruit, when none had in fact been purchased, is no more conclusive.

The appellants rely with great confidence upon the position that the district attorney had no authority to bring this action in the name of the county without an order of the board of supervisors authorizing him to bring it. Section 8 of the County Government Act provides that "whenever any board of supervisors shall without authority of law, order any money paid as a salary, fees, or for any other purposes, and such money shall have been actually paid, or whenever any county officer has drawn any warrant or warrants in his own favor, or in favor of any other person, without being authorized by the board of supervisors or by the law, and the same shall have been paid, the district attorney of such county is hereby empowered, and it is hereby made his imperative duty to institute suit in the name of the county against such person or persons to recover the money so paid, and twenty per centum damages for the use thereof, and no order of the board of supervisors therefor shall be necessary to maintain such suit. When the money has not been paid on such order or warrants it is hereby made the imperative duty of the district attorney of such county, upon receiving notice thereof, to commence suit in the name of the county to restrain the payment of the same, and no order of the board of supervisors shall be necessary in order to maintain such suit." It is argued that since the power of a district attorney to commence a suit is limited to cases where the board of supervisors has "without authority of law" ordered moneys paid, such suit cannot be instituted where the board has acted, or assumed to act, under an authority vested in it by law; that the board of supervisors, as above stated, has authority to purchase personal property for the county and to order payment for the same, and that here the order in question was an order for the payment of money found to be due as the purchase price of the fruit bought by the county. This argument is, in a measure, similar to that just considered with relation to the conclusiveness of the orders of the board of supervisors. It is true that an order for the payment of property purchased by the county is not an order made by the supervisors without authority of law, but it is equally true that an order by the board of supervisors for the payment of indebtedness incurred in one year out of the revenue of the succeeding year is an order made without authority of law,

and that it is none the less without authority of law because it is given the guise and form of a purchase of property where no property was in fact purchased. As was said by the learned judge of the trial court in an opinion filed by him: "The question then turns upon the meaning of the words 'without authority of law.' Section 1667 of the Civil Code reads: 'That is not lawful which is: 1. Contrary to an express provision of law; 2. Contrary to the policy of express law . . . ; or, 3. Otherwise contrary to good morals. . . .' The ordering of the warrant drawn in July in consummation of a plan to pay the debts contracted in one fiscal year out of the funds of the next fiscal year was 'contrary to an express provision of the law,' to wit: of section 18, article XI, of the constitution." We are satisfied that, on the facts found, the district attorney was authorized by section 8 of the County Government Act to institute the action without having received from the board of supervisors an order to institute it. *County of Santa Cruz* v. *McPherson,* 133 Cal. 282, [65 Pac. 574]; *Sacramento County* v. *Southern Pacific Company,* 127 Cal. 217, [59 Pac. 568, 825], and similar cases cited, do not conflict with this view. In those cases the board of supervisors had made a contract within the scope of its powers, and ordered money paid thereunder. But in each case the contract had a real existence, and was not a mere cloak for a plan to expend money in defiance of the law.

The appellants contend that it would be inequitable to restrain the payment of the warrant in question, because the county would thereby be permitted to retain both the crop of fruit and the nine hundred and fifty dollars paid in exchange for the same, and that the county should be held estopped to restrain the payment of the warrant until it has restored to the owner (the Bank of Tehama County) the nine hundred and fifty dollars which it received without consideration. Whatever scope may be given to the doctrine of equitable estoppel as against municipal corporations, it is clear that that doctrine can have no application here. The constitution expressly forbids the payment of the indebtedness of one year out of the revenues of the next year. This prohibition is a limitation upon the powers of the officers of the county, and prevents them from creating a liability against the county contrary to the terms of the constitution. To hold that

CLII Cal.—12

the county by receiving property or services beyond its ability to pay out of the revenues of the current year, could be estopped from defending against a claim that they be paid out of the revenues of a succeeding year, would nullify the constitutional restriction. In many of the cases above cited—for example, *San Francisco Gas Co.* v. *Brickwedel,* 62 Cal. 641; *Shaw* v. *Statler,* 74 Cal. 258, [15 Pac. 833]; *Schwartz* v. *Wilson,* 75 Cal. 502, [17 Pac. 449]; *McGowan* v. *Ford,* 107 Cal. 177, [40 Pac. 231]; *Smith* v. *Broderick,* 107 Cal. 644, [48 Am. St. Rep. 167, 40 Pac. 1033]; *Weaver* v. *San Francisco,* 111 Cal. 319, [43 Pac. 972];—the municipal corporation had received something of value, for which, by force of the constitutional provision, it was not able to pay. But this was not regarded as furnishing a reason for paying the indebtedness out of funds which the constitution declared were not to be applied to such purpose.

The foregoing disposes of the substantial points made on the merits, with the exception of respondent's contention that the order for the issuance of the warrant was void on the ground that four of the supervisors were interested in the alleged contract of purchase. In view of the conclusion reached on the matters already discussed, it is unnecessary to consider this point.

The original complaint made the county treasurer the sole party defendant. The Bank of Tehama County intervened and moved to dissolve a preliminary injunction issued at the time of the filing of the complaint. This motion was met on the part of the plaintiff by a motion for leave to file an amended and supplemental complaint, which joined as parties defendant the board of supervisors and four members thereof who had taken part in the transaction with the bank, Conard, the alleged purchaser and seller of the fruit, and the Bank of Tehama County. The case made by the amended pleading was in nowise inconsistent with the cause of action originally attempted to be set forth. The court permitted this amended and supplemental complaint to be filed before taking up the motion to dissolve the preliminary injunction, and thereupon denied the motion to dissolve. These rulings are assigned as error. We think, however, that it is within the discretion of the court to permit the filing of an amended bill to support a preliminary injunction already issued, and

that if the amended bill shows good ground for the injunction it is not error to refuse to dissolve such writ for the mere reason that the original bill may have been defective. (*Barber* v. *Reynolds*, 33 Cal. 497.) In any event, if the order refusing to dissolve the injunction can be reviewed on this appeal from the judgment (said order being itself appealable, Code Civ. Proc., sec. 939), the injunction has now become merged in the final judgment, and if such final judgment properly restrains the payment of the warrant in question, it would not avail the appellants to have this court rule that the preliminary injunction should not have been originally granted, or that the motion to dissolve it should have been granted. (See *Sheward* v. *Citizens' Water Co.*, 90 Cal. 635, [27 Pac. 439].)

There was no impropriety in joining the other defendants with the county treasurer. Section 8 of the County Government Act above referred to provides that where the money has not been paid the district attorney shall "commence suit in the name of the county to restrain the payment of the same." Such suit, being a proceeding in equity, may properly join as defendants all who have an interest in the subject-matter of the litigation. All of the defendants here joined were so closely connected with the subject of the action that they were certainly proper if not indispensable parties. At any rate, no injury could have resulted from the joinder.

The judgment and order denying a new trial are affirmed.

Angellotti, J., Lorigan, J., Shaw, J., McFarland, J., and Henshaw, J., concurred.

Rehearing denied.